IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ROGER HAVENS                                                              PLAINTIFF

v.                                                              No. 3:19CV225-RP

TALLAHATCHIE COUNTY SHERIFF'S DEPT.
SHERIFF WILLIAM L. BREWER
DEPUTY SHERIFF TIMOTHY COLE
DEPUTY SHERIFF BENJI MCKINNEY
MELINDA MORGAN (SHERIFF'S FRIEND)
STEVE SIMMONS
PETE GRIFFEN                                                              DEFENDANTS

## MEMORANDUM OPINION

The plaintiff, an inmate in the custody of the Mississippi Department of Corrections, appeared before the court for a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether any claims in the present case filed under 42 U.S.C. § 1983 have sufficient merit to proceed. A plaintiff's claim must be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998)(citations omitted). The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Prison Litigation Reform Act applies to this case because the plaintiff was incarcerated when he filed this lawsuit.[1] For the reasons set forth below, all defendants in this case, except Deputy Sheriff Timothy Cole and Deputy Pete Griffen, will be

---

[1] 28 U.S.C. § 1915(g).

dismissed with prejudice from this case. The plaintiff's claims against Cole and Griffen regarding failure to protect him from injury and retaliation will proceed. The plaintiff's claims against Deputy Sheriff Pete Griffen for retaliation will also proceed, as will the plaintiff's claim that he received no medical care of any kind for two weeks after his release from the hospital to the Tallahatchie County Jail.

### Allegations

In the third week of January of 2018, Deputy Sheriff Tim Cole was transporting Roger Havens to the Tallahatchie County Jail and was traveling on I-55 between the Winona and Oakland exits. Havens told Cole that he needed to urinate, but Cole did not stop for "a couple of hours." He eventually permitted Mr. Havens to urinate in a truck stop parking lot. When they resumed the trip, Mr. Havens fell asleep just after the Winona exit, but woke up vomiting. When Havens rolled down the window to vomit, leaned his head outside the vehicle, Deputy Cole "pumped the brake," which ejected Havens from the truck window.

Havens woke up in the woods with severe injuries (including a broken neck). He was in severe pain and tried for a long time to make his way back to the highway to be picked up. He was eventually spotted and placed in an ambulance. Deputy Cole saw Havens in the ambulance and acted in a threatening manner, telling Havens that he had tapped the brakes because Havens had written letters to federal and state authorities about criminal activity in the Tallahatchie County Sheriff's Department.

Deputy Cole told the reporters on the scene that Havens had jumped from the vehicle. Havens was transported via ambulance first to Grenada Hospital, then to the ICU at the University of Mississippi Medical Center ("UMMC") in Jackson, Mississippi, where he underwent multiple

surgeries and stayed for a time.  Mr. Havens had wanted to be airlifted to the hospital, but poor weather conditions made air travel too dangerous.

Mr. Havens suffered broken bones in his neck, arm, fingers, toes, and feet.  He also suffered frostbite on his feet and toes.  He had tissue hanging out of his knee and had no skin on the palms of his hands or knuckles.  He suffered other injuries, as well.  He was eventually transported back to Tallahatchie County with several prescriptions, including pain medication.  Officer McKinney had received the prescriptions and doctor's orders from hospital personnel.  Mr. Havens never received any prescriptions; nor did he receive the treatment prescribed (bandage changes, etc.)  He could hardly move, but jail staff refused to take him to urinate, so he ended up urinating on himself.  Eventually, someone provided him with a bucket so that he could lean over his bed and relief himself in that.  He was unable to have a bowel movement for over two weeks.  Mr. Havens alleges that he did not receive any medical treatment during the first two weeks after his return to the Tallahatchie County Jail upon release from the hospital.

Nonetheless, Steve Simmons, a jail trustee, made efforts to care for Mr. Havens, such as bringing him fresh clothes and having other trustees help tend to his medical needs.  Simmons was eventually able to provide Havens some Tylenol about two weeks after his return from the hospital.  Two weeks later, Havens appeared in court, where everyone believed that he had leapt from the Sheriff's Department vehicle.

Havens is still in a wheelchair, and he believes that is so because he has not received the proper surgeries and physical therapy.  Upon being transported to CMCF, he requested that his property come with him, but Deputy McKinney refused.  Havens never did receive his property ($120, change, a cell phone and charger, 2 packs of cigarettes, a $150 money order, and a lighter).  Mr. Havens testified at his *Spears* hearing that Pete Griffen and others mistreated him by insulting him,

slapping him, and shoving him around just before he was transported to CMCF. Officer Cole was also on the scene and taunted him. Mr. Havens in currently housed in Unit 720 at CMCF. That unit houses inmates with physical and mental infirmities.

### Steve Simmons Is a Witness, Not a Party

At his *Spears* hearing, Mr. Havens informed the court that Mr. Simmons, an inmate trustee at the jail, is a witness, rather than a defendant. As such, the court will dismiss defendant Simmons with prejudice from this suit.

### Defamation Is Not a Valid Claim Under 42 U.S.C. § 1983

The plaintiff alleges that he suffered emotional distress and defamation of character as a result of the defendants' statements that he leapt from a moving vehicle. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Injury to reputation by false and defamatory statements is not a right protected by due process; as such, it is not cognizable under 42 U.S.C. § 1983. *Paul v. Davis*, 424 U.S. 693, 712, 96 S. Ct. 1155, 1166, 47 L. Ed. 2d 405 (1976). The plaintiff does not have a constitutional right to be free from defamation and emotional distress; as such, his claims for relief under 42 U.S.C. § 1983 must be dismissed. *Kerr v. Lyford,* 171 F.3d 330, 339 (5th Cir.2003), *abrogated on other grounds by Castellano v. Fragozo,* 352 F.3d 939, 948–49 (5th Cir.2003) (citing *Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). *Shinn v. College Station Indep. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir.1996) (per curiam) (there is no freestanding constitutional right to be free from emotional distress); *see also Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005), 42 U.S.C. § 1997e(e) (a *pro se* prisoner plaintiff in a case filed under 42 U.S.C. § 1983 must allege more than *de minimis* physical injury to state a claim for psychological or emotional damages). The

plaintiff's defamation claims will be dismissed with prejudice for failure to state a federal claim upon which relief could be granted.

*Supervisor Liability*

The following defendants will be dismissed with prejudice from this suit because they did not directly participate in the events giving rise to this suit; nor did they establish a policy which caused the alleged violations: the Tallahatchie County Sheriff's Department and Sheriff William L. Brewer. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007).

There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

Though failure to train employees may rise to the level of an official government policy giving rise to a claim under 42 U.S.C. § 1983, such claims are a rarity:

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton,* 489 U.S., at 388, 109 S.Ct. 1197. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.,* at 389, 109 S.Ct. 1197.

*Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359–60, 179 L. Ed. 2d 417 (2011).

In his complaint and during the *Spears* hearing, Mr. Havens made clear that he sued the Sheriff's Department and the Sheriff as the entities who controlled the actions of the defendants he believes to be responsible for the events giving rise to this lawsuit. Mr. Havens does not allege that the Sheriff's Department and Sheriff Brewer had any personal involvement or were causally connected to the incident in any way. Neither does he allege that a county or jail policy caused the harm he suffered. As such, these defendants will be dismissed from this suit for failure to state a constitutional question.

**Taking of Property Without Due Process of Law**

The plaintiff's allegations against Deputy McKinney regarding the loss of the plaintiff's property must be dismissed for failure to state a claim upon which relief could be granted. The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). This rule, the Paratt/Hudson doctrine, provides "that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property

by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct." *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson*, 486 U.S. at 533, *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 Fed.Appx. 731 (5th Cir. 2011).

Thus, the initial question before the court as to the plaintiff's claim regarding the taking of his property is whether Mississippi law affords him an adequate post-deprivation remedy for his loss. In most circumstances, suits against the Mississippi government would be controlled by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9 ("MTCA"), which became effective on April 1, 1993. As to suits filed by prisoners, the MTCA states:

> (1) A governmental entity and its employees acting and within the course scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code Ann. § 11-46-9(1)(m). At first blush, this statute would seem to foreclose any remedies the plaintiff may have under state law. However, the plaintiff's remedy for the taking of property arises directly from the Constitution of the State of Mississippi, which cannot be circumvented through a state statute. *Pickering v. Langston Law Firm, P.A.*, 88 So.3d 1269 (Miss. 2012). The unlawful taking of an inmate's property can violate Article 3, Section 17 of the Constitution of the State of Mississippi. *Bishop v. Reagans*, 2012 WL 1804623 (S.D. Miss.), *citing Johnson v. King*, 85 So.3d 307 (Miss.App.,2012). Article 3, Section 17 of the Mississippi Constitution reads:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use

- 7 -

alleged to be public, the question whether the contemplated use by the public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

The circumstances in Johnson are legally indistinguishable from those in the instant case. The prison officials in that case confiscated Johnson's drinking mug and disposed of it. *Johnson v. King*, 85 So.3d 307, 311-312 (Miss. App. 2012). Johnson had purchased the mug from the canteen with his own money. *Id*. The mug, as purchased, was not considered contraband, and Johnson had not modified the mug in such a way to turn it into contraband. *Id*. The Mississippi Court of Appeals held that, under these circumstances, the taking of Johnson's mug violated the Mississippi Constitution and that prison officials had to either replace the mug or compensate Johnson for the fair value of the mug. *Id*. Those facts mirror the facts in the present case. As such, the plaintiff in this case has an adequate remedy under state law, and his claims against Deputy McKinney for the taking of his property without due process of law must be dismissed.

### Negligent Conduct Does Not State a Claim Under 42 U.S.C. § 1983

Mr. Havens' allegations against Deputy Sheriff Benji McKinney for losing his prescriptions and doctor's orders sound wholly in negligence, as do his allegations against Melinda Morgan for ripping off his bandages and otherwise providing sub-par medical care. Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). As such, Mr. Havens' claims against Deputy McKinney and Melinda Morgan will be dismissed with prejudice for failure to state a claim upon which relief could be granted.

### Claims Going Forward

The plaintiff's claims against Deputy Sheriff Timothy Cole regarding failure to protect him from injury (being thrown from a moving vehicle) and retaliation (causing the plaintiff's ejection from

the vehicle because he notified authorities of illegal activities in the Tallahatchie County Jail) will

proceed. The plaintiff's claim against Deputy Sheriff Pete Griffen for retaliation (shoving the plaintiff

around and allowing others to do so) will also proceed. In addition, the plaintiff's claim that he

received no medical care of any kind for two weeks after his release from the hospital to the

Tallahatchie County Jail will go forward. The court will direct that process issue for these defendants

by separate order.

**Conclusion**

For the reasons set forth above:

(1) Defendant Steve Simmons will be dismissed with prejudice from this case, as the plaintiff

    intends him to be a witness, rather than a defendant;

(2) The plaintiff's claims regarding defamation will be dismissed with prejudice because

    defamation is not a valid claim under 42 U.S.C. § 1983;

(3) The Tallahatchie County Sheriff's Department and Sheriff William Brewer will be dismissed

    with prejudice from this case, as they were included only via county or supervisor liability;

(4) The plaintiff's claims regarding the taking of his property without due process of law will be

    dismissed with prejudice from this case, as he has an adequate remedy under state law for that

    claim;

(5) The plaintiff's allegations against Deputy Sheriff Benji McKinney for losing his prescriptions

    and doctor's orders sound wholly in negligence, as do his allegations against Melinda Morgan

    for ripping off his bandages and otherwise providing poor medical care. These claims will be

    dismissed with prejudice because negligence is not a valid claim under 42 U.S.C. § 1983;

(6) The plaintiff's claims against Deputy Sheriff Timothy Cole regarding failure to protect him

    from injury (being thrown from a moving vehicle) and for retaliation (causing his ejection

from the vehicle because the plaintiff notified authorities of illegal activities in the Tallahatchie County Jail) will proceed;

(7) The plaintiff's claims against Deputy Sheriff Pete Griffen for use of excessive force and retaliation (roughing the plaintiff up prior to his transport to CMCF and allowing others to do so) will also proceed;

(8) The plaintiff's claim that he received no medical care of any kind for two weeks after his release from the hospital to the Tallahatchie County Jail will likewise proceed.

**SO ORDERED**, this, the 28th day of May, 2020.

/s/   Roy Percy
UNITED STATES MAGISTRATE JUDGE