## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## OXFORD DIVISION

**ROGER HAVENS**                                                                    **PLAINTIFF**

**v.**                                                                    **No. 3:19CV225-RP**

**TALLAHATCHIE COUNTY SHERIFF'S DEPT.**
**SHERIFF WILLIAM L. BREWER**
**DEPUTY SHERIFF TIMOTHY COLE**
**DEPUTY SHERIFF BENJI MCKINNEY**
**MELINDA MORGAN (SHERIFF'S FRIEND)**
**STEVE SIMMONS**
**PETE GRIFFEN**                                                                    **DEFENDANTS**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Roger Havens, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendant Cole failed to protect him from injury during transport, retaliated against him for notifying authorities about problems at the Tallahatchie County Jail, and prevented him from receiving proper medical care. Defendant Deputy Timothy Cole has moved [39] for summary judgment. The plaintiff has not responded, and the deadline to do so has expired. The matter is ripe for resolution. For the reasons set forth below, the instant motion [39] for summary judgment will be granted, and judgment will be entered in favor of Deputy Cole.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving

party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994).

It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible. Matsushita, supra*. (emphasis added). "[D]etermining

- 3 -

whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

**Undisputed Material Facts[1]**

This litigation arose out of events that unfolded some five years ago, in 2016. On October 6, 2016, Roger Havens was convicted for the unlawful taking of a motor vehicle, shooting into a vehicle, and burglary of a building.[2] He was sentenced on November 22, 2016, to serve 92 days in the Mississippi Department of Corrections with nine years and 273 days of post release supervision as to the first crime and a concurrent term of five years of post-release supervision as to the second.[3] As to

---

[1] The court has taken the facts in this section nearly verbatim from the defendant's memorandum in support of his Motion for Summary Judgment, as the facts are well-documented, and the plaintiff has not responded to the motion. The exhibits referenced in this memorandum opinion may be found in the defendant's Motion for Summary Judgment.

[2] Exhibit C, (DEF 72-74).

[3] *Id.,* (DEF 72).

his third crime, Mr. Havens was placed under five years of post-release supervision.[4]  He was also

placed in the Drug Court Program on November 22, 2016.[5]

Because Havens failed to abide by the conditions of his post-release supervision (by failing to

comply with the Drug Court Program) the State of Mississippi petitioned for revocation May 31,

2017.[6]  On June 2, 2017, Circuit Court Judge Jimmy McClure issued a bench warrant for Havens to

answer the charge of violation of his post-release supervision.[7]  It was not until February of 2018 that

law enforcement was able to track down Havens and bring him into custody.

On February 5, 2018, Deputy Sheriff Tim Cole picked Havens up in Picayune, Mississippi,

and began transporting him to the Tallahatchie County Jail.[8]  During this trip, Havens told Deputy

Cole that he needed to use the restroom, so Deputy Cole stopped at a truck stop and allowed him to

use the restroom there.[9]  When they resumed the trip, Havens claimed he was feeling sick, rolled the

window down, and proceeded to throw up out the window.[10]  Havens alleged that "it felt like" Deputy

Cole tapped the brake, and he fell out the window.[11]

Havens woke up in the woods and had several injuries, including a broken right arm and wrist,

broken or crushed neck, broken fingers, broken leg, broken bones in his feet, frostbite on his feet and

toes, road rash on his back and legs, and cuts, scraps, and bruises."[12]  Additionally, Havens alleged

that he had tissue or muscle hanging out of his knee and no skin on the palms of his hands or his

---

[4] *Id.,* (DEF 74).
[5] *Id.*
[6] *Id.,* (DEF 72-74).
[7] *Id.,* (DEF 57).
[8] Exhibit D; Exhibit A, (DEF 1773); [Doc. 1], at 5.
[9] [Doc. 1], at 5.
[10] *Id.,* at 7.
[11] *Id.*
[12] [Doc. 1], at 14.

knuckles.[13]  Havens alleged that he had to push his injured body with one leg to crawl back to the highway to find help.[14]  When he did, he found a fence separating him from the highway, and he recalled futilely trying multiple times to get to the other side by crawling under the fence.[15]

According to Havens' medical records, he "jumped out of the back of a moving vehicle," on the night of February 5, 2018, and was found around 1:30 p.m. the afternoon of February 6, 2018.[16] The radio station log from the evening of February 5, 2018, reveals that Deputy Cole radioed in that Havens had jumped from the vehicle along I-55 at 7:47 p.m.[17]  Eventually, Havens was found by Steve Simmons and a few of his trustees.[18]  After discovering Havens, Mr. Simmons called an ambulance.[19]  Once the ambulance arrived, the paramedics placed Havens on a stretcher, and Mr. Simmons and his trustees assisted the paramedics in getting Havens over the fence to the ambulance.[20]

While Havens was inside the ambulance, he alleges that Deputy Cole entered it and said things such as "I did not know you [were] gone until I got off the exit in Oakland."[21]  Havens also claimed that when the ambulance driver informed Deputy Cole that a news reporter was outside, that Deputy Cole did not want to get out of the ambulance, seemed very mad, and was standing over Havens "like he was threatening me or trying to intimidate me in some kind of way."[22]

---

[13] *Id.*
[14] *Id.*, at 8.
[15] *Id.*, at 9-10.
[16] Exhibit A, (DEF 426).
[17] Exhibit D, (DEF 44).
[18] *Id.*, at 11.
[19] *Id.*
[20] [Doc. 1], at 12.
[21] *Id.*
[22] *Id.*

Havens alleged that he then asked Deputy Cole why he tapped the brakes.[23]  Mr. Havens claimed that Deputy Cole asked him why he had written letters to state and federal authorities to "tell on them."[24]  Havens then alleges that Deputy Cole exited the ambulance and spoke to the media that was at the scene, stating that Havens had jumped from the moving vehicle.[25]

Havens was immediately transported to Grenada Hospital.[26]  Around 3:05 p.m. on February 6, 2018, he was admitted to the emergency department at Grenada Hospital.[27]  Then, around 6:10 p.m., Havens was discharged from Grenada Hospital and transported to University of Mississippi Medical Center ("UMMC") in Jackson.[28]  UMMC's final diagnosis was that Roger Havens had an unspecified nondisplaced fracture of the second cervical vertebra and a nondisplaced fracture of the lateral malleolus of the left fibula.[29]  His injuries included a possible fracture of a bone in his left foot and a fracture to his right distal radial metaphyseal.[30]  Mr. Havens had an open fracture to his fifth left metacarpal.[31]  He did not suffer from frostbite; rather, he had bruising to his right great toe.[32]

Havens' treatment included his left knee being cleaned and a single suture applied to the three centimeter laceration.[33]  Havens also underwent surgery for his cervical fracture.[34]  Surgery was also performed on the fracture to his fifth left metacarpal.[35]  Additionally, Havens' hospital care included

---

[23] *Id.*, at 13.
[24] *Id.*
[25] *Id.*
[26] *Id.*, at 14.
[27] Exhibit A, (DEF 424).
[28] *Id.*
[29] *Id.*
[30] *Id.,* (DEF 484).
[31] *Id.,* (DEF 514).
[32] *Id.,* (DEF528).
[33] *Id.,* (DEF 492).
[34] *Id.,* (DEF 563).
[35] *Id.,* (DEF 514).

treatment for substance abuse as he tested positive for amphetamines.[36]  Upon discharge, medical

personnel stated that Mr. Havens was capable of bearing weight on his left leg while in the boot.[37]

His discharge instructions also provided that Havens could mobilize with a standard cane.[38]

Havens' medical records show that he gave medical personnel varying accounts of how his

injuries happened.  In one instance, he stated that, while in the back seat of Deputy Cole's vehicle, he

let down the window for some air and was "sucked out."[39]  The mechanism of his injury is listed on

that page as patient "jumped out of the back of a moving car."[40]  Havens stated at a different point that

when he rolled down the window, he stuck his arm out and was then "sucked out."[41]  On another

occasion, Havens informed medical personnel that he fell out of the vehicle.[42]  The discrepancies

between Havens' multiple stories were noted in his medical records, as it was "unclear what exactly

happened" and there were several different stories that were "rather questionable."[43]  Nonetheless,

Havens' medical records state many times that he was injured by jumping out of a moving vehicle.[44]

Eventually, Havens was transported to the Tallahatchie County Jail with several prescriptions,

including pain medication.[45]  Officer McKinney received the prescriptions and doctor's orders from

hospital personnel.[46]  Havens claims that when he was returned to the Tallahatchie Jail after his

hospital stay, he never received any of his medications.[47]  He also states that he is "not sure exactly

---

[36] *Id.,* (DEF 493).
[37] *Id.,* (DEF 481).
[38] *Id.*
[39] *Id.*, (DEF 426).
[40] *Id.*
[41] *Id.,* (DEF 427).
[42] *Id.*, (DEF 514).
[43] *Id.,* (DEF 494).
[44] *Id.,* at 426, 437, 473, 505, & 1773.
[45] [Doc. 1], at 14.
[46] *Id.,* at 15.
[47] *Id.*

how many days it was," but that one day a nurse came to treat his wounds and that she deliberately ripped his flesh off when she changed his bandages.[48]  He claims he did not receive any medical treatment from the jail the first two weeks upon his return to incarceration.[49]

Havens, however, was not held at the Tallahatchie County Jail for two weeks, as shown by his medical records and inmate records which state that he was held in the Tallahatchie County Jail from his discharge from UMMC on February 16, 2018,[50] to February 26, 2018, when he was transferred to another facility.[51]  Thus, Mr. Havens was only housed in the Tallahatchie County Jail for ten days. Further, on February 17th, one day after he arrived at the Tallahatchie County Jail from UMMC, he drafted a statement affirming that he consented to the Jail providing treatment for his wounds.[52]  In this statement, Havens attested that he would not hold nurse Melinda Morgan professionally accountable for any problems.[53]  This statement was signed by Havens and witnessed by Melinda Morgan.[54]

On February 22, 2018, a hearing to revoke Havens' post-release supervision sentence took place before Judge Jimmy McClure at the Panola County Courthouse in Sardis, Mississippi.[55]  On the date of this hearing, Mr. Havens was transported to the Panola County Courthouse by Deputy Pete Griffen.[56]  Following this hearing, Judge McClure revoked Havens' post-release supervision and ordered that he serve the remainder of his sentence with the Mississippi Department of Corrections.[57]

---

[48] *Id.,* at 15-16.
[49] [Doc. 13], page 3; *See* [Doc 1], at 16-17.
[50] Exhibit A, (DEF 460).
[51] Exhibit B, (DEF 410).
[52] Exhibit C, (DEF 59).
[53] *Id.*
[54] *Id.*
[55] Exhibit C, (DEF 77).
[56] [Doc. 1], at 19.
[57] Exhibit C, (DEF 67-70).

On October 17, 2019, Roger Havens filed this suit against the Tallahatchie County Sheriff's Department, Sheriff William Brewer, Deputy Sheriff Timothy Cole, Deputy Sheriff Benji McKinney, Melinda Morgan, Steve Simmons, and Pete Griffen.[58] A *Spears* hearing was held regarding this matter on January 14, 2020.[59] Following the hearing, the court dismissed Steve Simmons, the Tallahatchie County Sheriff's Department, Sheriff William Brewer, Deputy Sheriff Benji McKinney, and nurse Melinda Morgan as defendants.[60] Additionally, Havens' claims for defamation and the taking of his property were dismissed.[61]

 Hence, Mr. Havens' remaining claims against Deputy Cole are: failure to protect Havens from injury (being thrown from a moving vehicle), for retaliation (causing the plaintiff's ejection from the vehicle because he notified authorities of illegal activities in the Tallahatchie County Jail), and for the denial of medical care for the two weeks after his release from the hospital to the Tallahatchie County Jail.[62] In response to the court's dismissal of some of his claims, Mr. Havens filed a motion for reconsideration on June 17, 2020,[63] and the court denied the motion on March 23, 2021.[64]

**Qualified Immunity**

In this case, defendant Deputy Cole enjoys qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727,

---

[58] [Doc. 1], at 1-2, 4.
[59] [Doc. 12].
[60] [Doc. 14], page 1.
[61] *Id.*
[62] *Id.* at 2.
[63] [Doc. 21].
[64] [Doc. 34].

- 10 -

73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836–37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836–37. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### Claims Against Deputy Cole

Mr. Havens' claims against Deputy Cole are: (1) failure to protect him against injury from falling out of a moving transport vehicle; (2) retaliation, and (3) denial of medical care. Mr. Havens' allegations do not support any of these claims.

#### Failure to Protect

Mr. Havens claims that Deputy Cole failed to protect him from falling out of the window of a truck – either by failing to lock the windows of the vehicle or by tapping the vehicle's brakes. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates." *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] denial of medical care or the failure to protect." *Grabowski v. Jackson County Public Defender's Office*, 47 F.3d 1386,

1396 (5th Cir. 1995). A prisoner plaintiff cannot show that a prison official showed deliberate indifference unless he can show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect from it. *Id.* at 843. However, even in the absence of specific threat, an inmate may prove a claim of failure to protect if he can show that he was placed in a prison environment "where terror reigns." *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981), overruled on other grounds by *International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986). This situation arises in a jail or prison where officials permit violent offenders to hold sway over part or all of the facility – creating "a pervasive risk of harm and a failure to take reasonable steps to prevent the known risk." *Stokes v. Delcambre,* 710 F.2d 1120 (5th Cir. 1983) (sheriff housed college students arrested on a non-violent misdemeanor charge with a dozen inmates charged with violent felonies – leading to the students' severe beating and rape). Indeed, "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

Mr. Havens has not shown that Deputy Cole was aware of facts from which he could infer that Mr. Havens faced "a substantial risk of serious harm" of falling out of the vehicle's window while moving down the highway – either from unlocked windows or tapping the brakes. Similarly, Mr. Havens has not alleged that Deputy Cole actually drew such an inference. The problem Mr. Havens

- 12 -

faces with this allegation is that, "draw[ing] on … experience and common sense," the court finds that it is utterly implausible that Mr. Havens could have "fallen" from or been "sucked out" of the window of a moving truck as he described. *Iqbal, supra*. To the extent that Mr. Havens leapt from the moving vehicle (as he stated many times to medical personnel), Deputy Cole is not responsible for that action, as it cannot be attributed to Cole's conduct, only to Mr. Havens'. As such, Mr. Havens has not alleged facts sufficient to support his claim against Deputy Cole for failure to protect him from being injured in this way. This allegation fails to state a constitutional question and must be dismissed.

### No Evidence of Retaliation

Mr. Havens has offered no evidence that Deputy Cole retaliated against him for notifying authorities of illegal activities at the Tallahatchie County Jail. Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every adverse event a prisoner may experience. *Id*. The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A prisoner seeking to establish a retaliation claim must also show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL 706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006) at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188

F.3d 322, 325 (5ᵗʰ Cir. 1999), 2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*).  Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris* at 685.

In this case, Mr. Havens must prove that he engaged in constitutionally protected activity (informing authorities about illegal activities), faced significant adverse consequences, and that such action was taken "in an effort to chill [his] access to the courts or to punish [him]for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5ᵗʰ Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5ᵗʰ Cir.1987).  The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5ᵗʰ Cir. 1995).  *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5ᵗʰ Cir. 1997).

The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive.  In *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5ᵗʰ Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous lawsuits against administrators and staff within the Texas prison system.  The defendants then denied Johnson's request to have his custody status upgraded, and Johnson alleged that the denial was in retaliation for filing his previous suits.  *Id.*  The Fifth Circuit rejected Johnson's claim – and explained why courts must insist upon specific factual allegations to support an inference of retaliation:

> If we were to hold that [Johnson] by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country.  Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or

- 14 -

> another, such as the past filing of a grievance, a complaint about food or a cellmate, or
> a prior complaint that he was not being treated equally with other prisoners. If we
> were to uphold the further pursuit of [Johnson's] complaint in this case we would be
> opening the door to every disgruntled prisoner denied the next level of trustyship,
> reassigned to another prison job, moved to another cell, [or] claiming his shoes were
> uncomfortable, to bring such a suit.

*Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988).

Prisoners routinely file grievances (or lawsuits) against prison staff on an ongoing basis, for any number of reasons. As such, it is not uncommon for a prisoner to file a lawsuit, then receive a Rule Violation Report (or suffer some other adverse action) sometime thereafter. Thus, to avoid turning nearly every adverse event affecting a prisoner into a claim of retaliation, courts insist upon additional allegations or evidence to substantiate a retaliation claim, such as prison staff issuing threats of disciplinary action if an inmate files further grievances, staff members pulling an inmate aside to threaten him, members of prison staff perpetrating unprovoked acts of violence against an inmate, or prison staff members wholly fabricating charges of prison rule violations against an inmate. *See Decker v. McDonald*, 2010 WL 1424322 (E.D. Tex. 2010) (Magistrate Judge's Report and Recommendation) (unpublished), adopted by the District Court, 2010 WL 1424292 (E.D. Tex.) (unpublished).

Mr. Havens alleges that Deputy Cole retaliated against him for writing a letter in 2016 (notifying authorities of alleged illegal activities by the Tallahatchie County Sheriff's Department) by causing him to be ejected from the transport vehicle.[65] However, he has offered no proof that Deputy Cole actually engaged in a retaliatory adverse act, or that, but for a retaliatory motive, the complained of incident would not have occurred. Indeed, according to his medical records, Mr. Havens claims

---

[65] [Doc. 1], at 13.

that his injuries were caused by the wind sucking him out of the vehicle – or because he, of his own accord, leapt from the vehicle.[66]  In short, he provides only his personal belief that the 2016 letter was the cause of this accident, and this conclusionary allegations of retaliation is not sufficient.[67]

Not only has Mr. Havens failed to produce any evidence of direct motivation or a sufficient chronology of events to support his retaliation claim, but the basis his claims for the alleged retaliation does not reveal any plausible inference of retaliation.  The letter that he holds up as the basis of retaliation was written in 2016, two years before his transport.[68]  The more time between the exercise of a constitutional right and the alleged retaliatory act, the less likely an adverse act is retaliatory.[69]  Here, Mr. Havens alleges that he wrote this letter in 2016, but the alleged retaliation occurred nearly two years later in 2018 – a time too remote to infer a causal connection.

### Denial of Medical Treatment

Mr. Cole has not alleged facts sufficient to support a claim that Deputy Cole denied him adequate medical treatment.  In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ."  *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992).  The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

---

[66] Exhibit A, (DEF 426-27).
[67] [Doc. 1], at 13.
[68] *Id.*
[69] *See Taylor v. Pennington*, No. 4:17CV83-SA-RP, 2017 WL 5501491, at *4 (N.D. Miss. Nov. 7, 2017).

Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing

- 17 -

deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

First, Mr. Havens provides *no* factual allegations that Deputy Cole was directly or personally involved with the medical care he claims he was denied at the Tallahatchie County Jail. For this reason alone, Mr. Havens' denial of medical care claim must be dismissed. In addition, Mr. Havens' discharge records show that he was capable of bearing weight on his left leg while wearing the boot provided to him.[70] His discharge instructions also provided that he could move about with a standard cane.[71] Hence, contrary to his claims that he was completely at the mercy of the jail staff, his hospital records reveal that he was able to move about and that his legs were capable of bearing weight.

In any event, Mr. Havens concedes that he, indeed, received some medical care during his ten-day stay at the Tallahatchie County Jail. On February 17, 2018, a day after he arrived at the Tallahatchie County Jail from UMMC, he wrote out and signed a statement in the presence of Nurse Melissa Morgan – affirming that he consented to the Jail providing treatment for his wounds.[72] In his complaint, he alleged that a woman changed his bandages at the Tallahatchie County Jail.[73]

In sum, Roger Havens has not alleged any acts or omissions which show Deputy Cole's "deliberate indifference to serious medical needs."[74] Neither has he alleged that Deputy Cole contributed to "an unnecessary and wanton infliction of pain ... or acts repugnant to the conscience of

---

[70] Exhibit A, (DEF 481).
[71] *Id.*
[72] Exhibit C, (DEF 59).
[73] [Doc. 1], at 16.
[74] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

mankind."[75]  As such, he cannot show that Deputy Cole knew that Havens faced a substantial risk of serious harm and that Deputy Cole disregarded that risk by failing to take reasonable measures to abate it.[76]  For the reasons set forth above, the claim against Deputy Cole for denial of adequate medical care must fail.

First, Mr. Havens has not alleged the violation of a clearly established constitutional right, as the facts alleged do not support any of his claims.  In addition, Mr. Havens has not shown that Deputy Cole's conduct was objectively unreasonable in the light of the law established at the time of the incident.  *Heitschmidt*, 161 F.3d at 836–37.  As such, Deputy Cole is cloaked in qualified immunity, and all of the plaintiff's claims against him must be dismissed.

**Conclusion**

For the reasons set forth above, all of the plaintiff's allegations against Deputy Cole must be dismissed because:  (1) he is cloaked with qualified immunity; and (2) the claims fail on the merits.  Thus, judgment will be entered today in favor of Deputy Timothy Cole in all respects.

**SO ORDERED**, this, the 28th day of October, 2021.


/s/   Roy Percy
UNITED STATES MAGISTRATE JUDGE

---

[75] *Estelle*, 429 U.S. at 105-06.
[76] *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).