IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ROGER HAVENS**                                                                  **PLAINTIFF**

v.                                                           No. 3:19CV225-RP

**TALLAHATCHIE COUNTY SHERIFF'S DEPT.**
**SHERIFF WILLIAM L. BREWER**
**DEPUTY SHERIFF TIMOTHY COLE**
**DEPUTY SHERIFF BENJI MCKINNEY**
**MELINDA MORGAN (SHERIFF'S FRIEND)**
**STEVE SIMMONS**
**PETE GRIFFEN**                                               **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Roger Havens, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Defendant Deputy Pete Griffen has moved [41] for summary judgment, arguing that he is cloaked with qualified immunity and that the plaintiff's allegations fail on the merits. The plaintiff alleges that Deputy Griffen used excessive force against him, retaliated against him, and denied him adequate medical care. For the reasons set forth below, Deputy Griffen's motion [41] for summary judgment will be granted in all respects; judgment will be entered in his favor, and the instant case will be dismissed.

**Summary Judgment Standard**

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994).

It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible. Matsushita, supra*. (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009)

(discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

## Undisputed Material Facts[1]

This litigation arose out of events that unfolded some five years ago, in 2016. On October 6, 2016, Roger Havens was convicted for the unlawful taking of a motor vehicle, shooting into a vehicle, and burglary of a building.[2] He was sentenced on November 22, 2016, to serve 92 days in the Mississippi Department of Corrections with nine years and 273 days of post release supervision as to the first crime and a concurrent term of five years of post-release supervision as to the second.[3] As to his third crime, Mr. Havens was placed under five years of post-release supervision.[4] He was also placed in the Drug Court Program on November 22, 2016.[5]

Because Havens failed to abide by the conditions of his post-release supervision (by failing to comply with the Drug Court Program) the State of Mississippi petitioned for revocation May 31,

---

[1] The court has taken the facts in this section nearly verbatim from the defendant's memorandum in support of his Motion for Summary Judgment, as the facts are well-documented, and the plaintiff has not responded to the motion. The exhibits referenced in this memorandum opinion may be found in the defendant's Motion for Summary Judgment.
[2] Exhibit C, (DEF 72-74).
[3] *Id.,* (DEF 72).
[4] *Id.,* (DEF 74).
[5] *Id.*

2017.[6] On June 2, 2017, Circuit Court Judge Jimmy McClure issued a bench warrant for Havens to answer the charge of violation of his post-release supervision.[7] It was not until February of 2018 that law enforcement was able to track down Havens and bring him into custody.

On February 5, 2018, Deputy Sheriff Tim Cole picked Havens up in Picayune, Mississippi, and began transporting him to the Tallahatchie County Jail.[8] During this trip, Havens told Deputy Cole that he needed to use the restroom, so Deputy Cole stopped at a truck stop and allowed him to use the restroom there.[9] When they resumed the trip, Havens claimed he was feeling sick, rolled the window down, and proceeded to throw up out the window.[10] Havens alleged that "it felt like" Deputy Cole tapped the brake, and he fell out the window.[11]

Havens woke up in the woods and had several injuries, including a broken right arm and wrist, broken or crushed neck, broken fingers, broken leg, broken bones in his feet, frostbite on his feet and toes, road rash on his back and legs, and cuts, scraps, and bruises."[12] Additionally, Havens alleged that he had tissue or muscle hanging out of his knee and no skin on the palms of his hands or his knuckles.[13] Havens alleged that he had to push his injured body with one leg to crawl back to the highway to find help.[14] When he did, he found a fence separating him from the highway, and he recalled futilely trying multiple times to get to the other side by crawling under the fence.[15]

---

[6] *Id.,* (DEF 72-74).
[7] *Id.,* (DEF 57).
[8] Exhibit D; Exhibit A, (DEF 1773); [Doc. 1], at 5.
[9] [Doc. 1], at 5.
[10] *Id.,* at 7.
[11] *Id.*
[12] [Doc. 1], at 14.
[13] *Id.*
[14] *Id.,* at 8.
[15] *Id.,* at 9-10.

According to Havens' medical records, he "jumped out of the back of a moving vehicle," on the night of February 5, 2018, and was found around 1:30 p.m. the afternoon of February 6, 2018.[16] The radio station log from the evening of February 5, 2018, reveals that Deputy Cole radioed in that Havens had jumped from the vehicle along I-55 at 7:47 p.m.[17] Eventually, Havens was found by Steve Simmons and a few of his trustees.[18] After discovering Havens, Mr. Simmons called an ambulance.[19] Once the ambulance arrived, the paramedics placed Havens on a stretcher, and Mr. Simmons and his trustees assisted the paramedics in getting Havens over the fence to the ambulance.[20]

Havens was immediately transported to Grenada Hospital.[21] Around 3:05 p.m. on February 6, 2018, he was admitted to the emergency department at Grenada Hospital.[22] Then, around 6:10 p.m., he was discharged from Grenada Hospital and transported to University of Mississippi Medical Center ("UMMC") in Jackson.[23] UMMC's final diagnosis was that Roger Havens had an unspecified nondisplaced fracture of the second cervical vertebra and a nondisplaced fracture of the lateral malleolus of the left fibula.[24] His injuries included a possible fracture of a bone in his left foot and a fracture to his right distal radial metaphyseal.[25] Mr. Havens had an open fracture to his fifth left metacarpal.[26] He did not suffer from frostbite; rather, he had bruising to his right great toe.[27]

---

[16] Exhibit A, (DEF 426).
[17] Exhibit D, (DEF 44).
[18] *Id.*, at 11.
[19] *Id.*
[20] [Doc. 1], at 12.
[21] *Id.*, at 14.
[22] Exhibit A, (DEF 424).
[23] *Id.*
[24] *Id.*
[25] *Id.*, (DEF 484).
[26] *Id.*, (DEF 514).
[27] *Id.*, (DEF528).

Havens' treatment included his left knee being cleaned and a single suture applied to the three centimeter laceration.[28] Havens also underwent surgery for his cervical fracture.[29] Surgery was also performed on the fracture to his fifth left metacarpal.[30] Additionally, Havens' hospital care included treatment for substance abuse as he tested positive for amphetamines.[31] Upon discharge, medical personnel stated that Mr. Havens was capable of bearing weight on his left leg while in the boot.[32] His discharge instructions also provided that Havens could mobilize with a standard cane.[33]

Havens' medical records show that he gave medical personnel varying accounts of how his injuries happened. In one instance, he stated that, while in the back seat of Deputy Cole's vehicle, he let down the window for some air and was "sucked out."[34] The mechanism of his injury is listed on that page as patient "jumped out of the back of a moving car."[35] Havens stated at a different point that when he rolled down the window, he stuck his arm out and was then "sucked out."[36] On another occasion, Havens informed medical personnel that he fell out of the vehicle.[37] The discrepancies between Havens' multiple stories were noted in his medical records, as it was "unclear what exactly happened" and there were several different stories that were "rather questionable."[38] Nonetheless, Havens' medical records state many times that he was injured by jumping out of a moving vehicle.[39]

---

[28] *Id.,* (DEF 492).
[29] *Id.,* (DEF 563).
[30] *Id.,* (DEF 514).
[31] *Id.,* (DEF 493).
[32] *Id.,* (DEF 481).
[33] *Id.*
[34] *Id.,* (DEF 426).
[35] *Id.*
[36] *Id.,* (DEF 427).
[37] *Id.,* (DEF 514).
[38] *Id.,* (DEF 494).
[39] *Id.,* at 426, 437, 473, 505, & 1773.

Eventually, Havens was transported to the Tallahatchie County Jail with several prescriptions, including pain medication.[40] Officer McKinney received the prescriptions and doctor's orders from hospital personnel.[41] Havens claims that when he was returned to the Tallahatchie Jail after his hospital stay, he never received any of his medications.[42] He also states that he is "not sure exactly how many days it was," but that one day a nurse came to treat his wounds and that she deliberately ripped his flesh off when she changed his bandages.[43] He claims he did not receive any medical treatment from the jail the first two weeks upon his return to incarceration.[44]

Havens, however, was not held at the Tallahatchie County Jail for two weeks, as shown by his medical records and inmate records which state that he was held in the Tallahatchie County Jail from his discharge from UMMC on February 16, 2018,[45] to February 26, 2018, when he was transferred to another facility.[46] Thus, Mr. Havens was only housed in the Tallahatchie County Jail for ten days. Further, on February 17, 2018, one day after he arrived at the Tallahatchie County Jail from UMMC, he drafted a statement affirming that he consented to the Jail providing treatment for his wounds.[47] In this statement, Havens attested that he would not hold nurse Melinda Morgan professionally accountable for any problems.[48] This statement was signed by Havens and witnessed by Melinda Morgan.[49]

---

[40] [Doc. 1], at 14.
[41] *Id.,* at 15.
[42] *Id.*
[43] *Id.,* at 15-16.
[44] [Doc. 13], page 3; *See* [Doc 1], at 16-17.
[45] Exhibit A, (DEF 460).
[46] Exhibit B, (DEF 410).
[47] Exhibit C, (DEF 59).
[48] *Id.*
[49] *Id.*

On February 22, 2018, a hearing to revoke Havens' post-release supervision sentence took place before Judge Jimmy McClure at the Panola County Courthouse in Sardis, Mississippi.[50] On the date of this hearing, Mr. Havens was transported to the Panola County Courthouse by Deputy Pete Griffen.[51] Following this hearing, Judge McClure revoked Havens' post-release supervision and ordered that he serve the remainder of his sentence with the Mississippi Department of Corrections, and he was transported to the Central Mississippi Correctional Facility.[52] Mr. Havens alleges that, before his transport to CMCF, "[t]he Panola County Deputies who helped get me out were even say[ing] I inflicted the injuries myself."[53] He further claims that "nobody anywhere" would listen to him but "only talked down to [him] and teased and harassed [him]."[54] During his *Spears* hearing, Mr. Havens testified that it was not Deputy Griffen who teased and harassed him; instead, Deputy Griffen "had these deputies (the Panola County deputies)…they finally got these folks from the court to come out there. And *they* handled me rough….*They* slammed me around."[55] Mr. Havens testified that Griffen "knows exactly how rough they handled me."[56] Deputy Griffen witnessed the Panola County court deputies handling Havens "roughly," but did not participate. Mr. Havens has not alleged any injury arising out of his encounter with the deputies.

On October 17, 2019, Roger Havens filed this suit against the Tallahatchie County Sheriff's Department, Sheriff William Brewer, Deputy Sheriff Timothy Cole, Deputy Sheriff Benji McKinney, Melinda Morgan, Steve Simmons, and Pete Griffen.[57] The court held a *Spears* hearing regarding this

---

[50] Exhibit C, (DEF 77).
[51] [Doc. 1], at 19.
[52] Exhibit C, (DEF 67-70).
[53] [Doc. 1], at 19.
[54] [Doc. 1], at 19.
[55] Exhibit E, page 24 (emphasis added).
[56] Exhibit E, page 24.
[57] [Doc. 1], at 1-2, 4.

matter on January 14, 2020.⁵⁸ Following the hearing, the court dismissed Steve Simmons, the Tallahatchie County Sheriff's Department, Sheriff William Brewer, Deputy Sheriff Benji McKinney, and nurse Melinda Morgan as defendants.⁵⁹ Additionally, Havens' claims for defamation and the taking of his property were dismissed.⁶⁰

    Mr. Havens' remaining claims against Deputy Griffen are: use of excessive force prior to transporting Havens from the Panola County courthouse to the Central Mississippi Correctional Facility; retaliation (using excessive force because Havens notified authorities of illegal activities in the Tallahatchie County Jail), and denial of medical care for the two weeks after his release from the hospital to the Tallahatchie County Jail.⁶¹ In response to the court's dismissal of some of his claims, Mr. Havens filed a motion for reconsideration on June 17, 2020,⁶² which the court denied on March 23, 2021.⁶³

## Qualified Immunity

In this case, defendant Deputy Cole enjoys qualified immunity from suit. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5ᵗʰ Cir. 2003); *Heitschmidt v. City of*

---

⁵⁸ [Doc. 12].
⁵⁹ [Doc. 14], page 1.
⁶⁰ *Id.*
⁶¹ *Id.* at 2.
⁶² [Doc. 21].
⁶³ [Doc. 34].

*Houston*, 161 F.3d 834, 836–37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836–37. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### Excessive Force Against Pretrial Detainees

Mr. Havens claims that Deputy Griffen used excessive force against him just before his transport from Panola County to CMCF. "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015) (citing *Graham v. Connor*, 490 U.S. 386, 395, n. 10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). To state a claim of excessive force, a pretrial detainee must allege: (1) that the defendant had a "purposeful, knowing, or possible a reckless state of mind" as to his "physical acts – *i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world," and (2) that the defendant's intentional actions in the physical world were *objectively unreasonable*. *Kingsley*, 135 S. Ct. at 2472. Put another way, the plaintiff must allege that the defendant knowingly or purposefully used force – and that the force was objectively unreasonable. *Id*. at 2473.

Objective reasonableness turns on the "facts and circumstances of each particular case," from the perspective of a reasonable officer at the scene, including what that officer knew at the time – and without the crystal clarity of hindsight. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The "management by a few guards of large numbers of prisoners" in a jail "may require and justify the occasional use of a degree of intentional force." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (citing *Johnson v. Glick*, 481 F.2d 1028 ($2^d$ Cir. 1973)). The court must also consider the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Indeed, "[r]unning a [jail] is an inordinately difficult undertaking," *Turner v. Safley,* 482 U.S. 78, 84–85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), and "safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. ——, ——, 132 S.Ct. 1510, 1515, 182 L.Ed.2d 566 (2012). Officers facing disturbances in a jail "are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S., at 397, 109 S.Ct. 1865. A judge, who has ample time to reflect on the matter in the solitude of chambers, must be mindful of these considerations when deciding whether an officer's use of force was objectively reasonable.

Even in the absence of an expressed intent to punish, a pretrial detainee may nonetheless prove a claim of excessive force by showing that the guard's actions are not "rationally related to a legitimate nonpunitive governmental purpose" or that the actions "appear excessive in relation

to that purpose." *Bell*, 441 U.S. at 561, *see also Block v. Rutherford*, 468 U.S. 576, 585-586, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). In deciding whether the force used was objectively reasonable, the court may consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*. 135 S. Ct. at 2473. This list is not exhaustive, merely illustrative. *Id*.

The prohibition against the use of excessive force against prisoners "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian,* 503 U.S. 1, 9-10, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citation omitted). Moreover, "[i]n cases post-*Hudson*, 'certainly some injury is still required.'" *Rankin*, 5 F.3d at 108; *see also Knight v. Caldwell*, 970 F.2d 1430 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S. Ct. 1298, 122 L. Ed. 2d 688 (1993). A single incident of force or a single blow is *de minimis* and thus does not rise to the level of a constitutional violation. *Jackson v. Colbertson*, 984 F. 2d 699, 700 (5th Cir. 1993). Likewise, allegations of a "push or shove" that caused no discernible injury fail to state a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (citing *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995). A *de minimis* use of force, such as a slap or a shove, does not implicate constitutional concerns. *Moses v. Morgan*, 2016 U.S. Dist. LEXIS 184507, *9 (W.D. La. Sept. 23, 2016) (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). In addition, minimal injuries, such as bruised and bleeding elbows, do not rise to the level to justify a claim under the Eighth Amendment. *Id.*

In this case, Mr. Havens' claim of excessive force against Deputy Griffen prior to his transport to CMCF must fail, as Havens has not satisfied any of the elements of a Fourteenth Amendment

excessive force claim. Havens has not provided evidence that he suffered any injury whatsoever from the alleged force by Deputy Griffen used; indeed, he has not even alleged that he suffered any injury.[64] Further, Havens did not allege in his complaint that Deputy Griffen used any force at all.[65]

Mr. Havens' factual allegations against Deputy Griffen are insufficient to state a valid excessive force claim. Havens never alleges in the complaint that Deputy Griffen caused him harm.[66] Havens alleged that Deputy Griffen transported him to the Panola County Courthouse in Sardis, Mississippi.[67] Next, he alleged that "[t]he Panola County Deputies who helped get me out were even say[ing] I inflicted the injuries myself."[68] He further claims that "nobody anywhere" would listen to him but "only talked down to [him] and teased and harassed [him]."[69] According to Mr. Havens, Deputy Griffen "had these deputies (the Panola County deputies)…they finally got these folks from the court to come out there. And *they* handled me rough…. *They* slammed me around."[70] Mr. Havens also stated that Griffen "knows exactly how rough they handled me."[71]

Under the heightened pleading standard applicable to cases defended on qualified immunity grounds, the plaintiff must plead "with factual detail and particularity, not mere conclusory allegations."[72] Havens did not do this, as such, this claim must be dismissed.

In any event, Mr. Havens cannot prove an excessive force violation. During his *Spears* hearing, he testified that Deputy Griffen did not participate in the challenged conduct; rather, he was present when the Panola County deputies handled Havens him roughly and shoved him around. In

---

[64] [Doc. 1], at 19; Exhibit E, page 24 (emphasis added).
[65] [Doc. 1], at 19.
[66] [Doc. 1], at 19.
[67] [Doc. 1], at 19.
[68] [Doc. 1], at 19.
[69] [Doc. 1], at 19.
[70] Exhibit E, page 24.
[71] Exhibit E, page 24.
72

other words, Deputy Griffen merely witnessed the Panola County court deputies handling Havens "roughly" – and did not participate in the conduct. Finally, Mr. Havens has not alleged any injury from the incident. None of these allegations establish a valid claim of excessive force; rather, Mr. Havens has at best set forth accusations of *de minimis* uses of force that caused no discernible injury. As such, Mr. Havens' claims regarding excessive force must fail.

### No Evidence of Retaliation

Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). On the other hand, courts must view such claims with skepticism to keep from getting bogged down in every act of discipline prison officials impose. *Id*. The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (citations omitted ), *cert. denied*, 516 U.S. 1084, 116 S. Ct. 800, 133 L. Ed. 2d 747 (1996). A prisoner seeking to establish a retaliation claim must also show that the prison official's conduct was sufficiently adverse so that it would be capable of deterring a person of ordinary firmness from exercising his constitutional rights in the future. *Winding v. Grimes*, 4:08CV99-FKB, 2010 WL 706515 at 3 (S.D. Miss. Feb. 22, 2010); *citing Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006) at 685. A single incident involving a minor sanction is insufficient to prove retaliation. *Davis v. Kelly*, 2:10CV271-KS-MTP (citing *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999), 2:10CV271-KS-MTP, 2012 WL 3544865 *Id.*). Similarly, inconsequential (*de minimis*) acts by prison officials do not give rise to an actionable retaliation claim. *See Morris* at 685.

In this case, Mr. Havens must prove that he engaged in constitutionally protected activity, faced significant adverse consequences, and that such action was taken "in an effort to … punish [him] for having brought suit." *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S. Ct. 312, 130 L. Ed. 2d 275 (1994); *see also Serio v. Members of Louisiana State Board of Pardons*, 821 F.2d 1112, 1114 (5th Cir.1987). The showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation." *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995). *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

The Fifth Circuit has made clear the dangers of permitting retaliation claims to proceed in the absence of factual allegations to support an inference of a retaliatory motive. In *Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988), the plaintiff, Daniel Johnson, had filed numerous lawsuits against administrators and staff within the Texas prison system. The defendants then denied Johnson's request to have his custody status upgraded, and Johnson alleged that the denial was in retaliation for filing his previous suits. *Id.* The Fifth Circuit rejected Johnson's claim – and explained why courts must insist upon specific factual allegations to support an inference of retaliation:

> If we were to hold that [Johnson] by his allegations in this case had established a case which was entitled to the full panoply of discovery, appointment of counsel, jury trial and the like, we would be establishing a proposition that would play havoc with every penal system in the country. Prison administrators must classify and move prisoners. It is a virtual truism that any prisoner who is the subject of an administrative decision that he does not like feels that he is being discriminated against for one reason or another, such as the past filing of a grievance, a complaint about food or a cellmate, or a prior complaint that he was not being treated equally with other prisoners. If we were to uphold the further pursuit of [Johnson's] complaint in this case we would be opening the door to every disgruntled prisoner denied the next level of trustyship, reassigned to another prison job, moved to another cell, [or] claiming his shoes were uncomfortable, to bring such a suit.

*Whittington v. Lynaugh*, 842 F.2d 818, 819 (5th Cir. 1988).

Prisoners routinely complain about prison staff on an ongoing basis, for any number of reasons. As such, it is not uncommon for a prisoner to complain, then experience an adverse event sometime thereafter. Thus, to avoid turning nearly every adverse event a prisoner experiences into a claim of retaliation, courts insist upon additional allegations or evidence to substantiate a retaliation claim, such as prison staff issuing threats of disciplinary action if an inmate files further grievances, staff members pulling an inmate aside to threaten him, members of prison staff perpetrating unprovoked acts of violence against an inmate, or prison staff members wholly fabricating charges of prison rule violations against an inmate. *See Decker v. McDonald*, 2010 WL 1424322 (E.D. Tex. 2010) (Magistrate Judge's Report and Recommendation) (unpublished), adopted by the District Court, 2010 WL 1424292 (E.D. Tex.) (unpublished).

The allegations Mr. Havens has raised against Deputy Griffen are insufficient to state a valid retaliation claim. First, Mr. Havens has not stated precisely what constitutional right he exercised that caused Deputy Griffen to allegedly retaliate.[73] Because of this, he cannot prove the first and third element. Instead, he merely asserted that "[t]he Panola County Deputies who helped get me out were even say[ing] I inflicted the injuries myself."[74] He further claims that "nobody anywhere" would listen to him but "only talked down to [him] and teased and harassed [him]."[75] "[I]f the inmate is unable to point to a specific constitutional right that has been violated, the claim will fail."[76] The burden is on Havens to point to his specific constitutional right which has been violated, and he has not done so.

---

[73] [Doc. 1], at 19.
[74] [Doc. 1], at 19.
[75] [Doc. 1], at 19.
[76] *Jones v. Greninger,* 188 F.3d 322, 325 (5th Cir.1999)

- 17 -

Further, Mr. Havens has not alleged that Deputy Griffen intended to retaliate against him for his exercise of a right. Conclusory allegations of retaliation are insufficient to establish a claim for retaliation.[77] He "must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'"[78] Mr. Havens has done neither; his allegations simply do not state a valid claim for retaliation and must therefore be dismissed.

<b>Denial of Medical Treatment</b>

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986),

---

[77] *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995).
[78] *Id.* (citation omitted).

*Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

Deputy Griffen is entitled to qualified immunity on Havens' claim that he was denied medical care. In his complaint, Mr. Havens did not plead any facts which would connect this claim regarding medical care to Deputy Griffen. Under the heightened pleading standard applicable to cases defended on qualified immunity grounds, the plaintiff must plead "with factual detail and particularity, not mere conclusory allegations."[79] Havens provides *no* factual allegations that Deputy Griffen was directly or

---

[79] *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999).

personally involved with the medical care he claims he was denied at the Tallahatchie County Jail. For this reason, Havens' denial of medical care claim must be dismissed.

### None of the Plaintiff's Allegations Rise to the Level of a Constitutional Violation

As Mr. Havens has not alleged facts to support any constitutional violations, he has not met the first prong of the qualified immunity test. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003). As he has not met the first prong, the court need not decide the second – whether the right violated was clearly established. Thus, the plaintiff's allegations fail to state a valid constitutional claim, and Deputy Griffen is cloaked with qualified immunity. His motion for summary judgment will therefore be granted, and all the plaintiff's claims against him will be dismissed.

### Conclusion

For the reasons set forth above, the motion by defendant Deputy Griffen for summary judgment will be granted; judgment will be entered in his favor, and the instant case will be dismissed with prejudice. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 29th day of October, 2021.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE